0317-20371                                                                                                                    #1366690

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MAGNOLIA FLEET, LLC** | **CIVIL ACTION NO:** |
| **VERSUS** | 2:18-cv-8363 |
| **RICK GREY** | **DISTRICT JUDGE:** |
| | **MAGISTRATE JUDGE:** |

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW INTO COURT,** through undersigned counsel, comes Declaratory Plaintiff, Magnolia Fleet, LLC (hereinafter "Magnolia Fleet"), which represents, upon information and belief, the following:

I.

Declaratory Plaintiff, Magnolia Fleet ("Magnolia Fleet"), is a limited liability company duly organized under the laws of the state of Louisiana, and is duly authorized to do and is doing business within the jurisdiction of the United States District Court for the Eastern District of Louisiana, with its principal place of business located in Metairie, Louisiana.

II.

Declaratory Defendant, Rick Grey ("Grey"), is a person of full age and majority, with a last known address at 3823 General Meyer Avenue in New Orleans, Louisiana.

III.

This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1333, and venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

IV.

This action is for a declaratory judgment pursuant to 28 U.S.C. § 2201 and involves an actual controversy between the parties which requires immediate resolution by this Honorable Court.

V.

Grey was an employee of Magnolia Fleet on or about April 3, 2018, and working aboard the M/V LYNNE, a vessel operated by Magnolia Fleet.

VI.

At all material times, Grey was employed by Magnolia Fleet as a deckhand and is therefore properly classified as a seaman within the meaning of the Jones Act, 46 U.S.C. § 30103 et seq.

VII.

Grey contends that on or about April 3, 2018, he sustained lower back injuries while in the service of the M/V LYNNE, due to a slip and fall in the vessel's shower stall which purportedly caused injury to his thoracic spine.

VIII.

Following Grey's report of injury, Magnolia Fleet provided Grey with immediate medical care from Dr. Michael Zeringue of the Pontchartrain Orthopedics & Sports Medicine on April 3, 2018, at which time Grey was diagnosed with cervicalgia, pain in the thoracic spine, and given a "no work" status.

IX.

Grey later began treating with Dr. James M. Dyess, of the Dyess Medical Center in Gretna, Louisiana on April 25, 2018, at which time Grey presented with continued complaints of neck pain radiating into his left arm, left elbow, and left hand into the left third and fourth fingers with pain,

numbness and weakness. Grey also complained of bowel incontinence, ringing in the ears, blurred vision, mid back pain, bilateral upper shoulder pain, chest pain, low back pain radiating into the right lateral leg, right ankle pain with numbness and weakness, short-term memory loss, and headaches. Dr. Dyess indicated that Grey should continue physiotherapy to the afflicted regions as directed and recommended that Grey consult a neurosurgeon for his cervical and lumbar spine, an ENT for the "ringing in the ears," and a neurologist for memory loss and blurred vision.

X.

On May 24, 2018, Grey returned to Dr. Dyess to review the results of his April 25, 2018 MRI with Diagnostic Imaging. Dr. Dyess opined that such revealed a positive L5-S1 disc herniation and positive L4-5 disc bulge.

XI.

On June 6, 2018, Grey underwent a "surgical consult" with Dr. Donald Dietze, of Dietze & Logan Spine Specialist, in connection with neck and thoracic pain. Dr. Dietze assessed Grey as suffering clinically isolated syndrome of brainstem, post-concussion syndrome, concussion without loss of consciousness, meningismus, pain in thoracic spine, acute bilateral low back pain with right-sided sciatica, fall, and a tyroid mass.

XII.

Dr. Dietze reported that he was concerned that Grey could possibly have an intracranial vascular malformation causing the alleged high-pitched sound "in his head" with brainstem syndrome causing the alleged left arm weakness and right leg weakness associated with abnormal reflexes. Dr. Dietze recommended that Grey undergo an MRI scan of the brain with MR angiography.

XIII.

In light of Grey's continued medical treatment following his alleged April 3, 2018 incident, Magnolia Fleet has acted reasonably and prudently in providing Grey with maintenance and cure benefits under protest. These benefits remain ongoing.

XIV.

As a result of Grey's complaints, Magnolia Fleet arranged for medical evaluations and treatment, including diagnostic studies, for Grey pursuant to the recommendations of his treating physicians.

XV.

Upon Dr. Dyess' recommendation that Grey consult a neurosurgeon, neurologist, and an ENT, in addition to his opinion that Grey suffers an L5-S1 disc herniation and L4-5 disc bulge, Magnolia Fleet requested that Grey submit to independent medical examinations with neurosurgeon, Dr. Gabriel Tender, and neurologist, Dr. Archie Melcher.[1]

XVI.

Magnolia Fleet sought these medical opinions from independent medical physicians in order to assess the nature and extent of Grey's alleged injuries and medical condition so as to determine whether cure is indeed owed to Grey pursuant to Magnolia Fleet's maintenance and cure obligation.

XVII.

The requested independent medical examinations are necessary as Grey's medical condition is pertinent evidence to his claim for maintenance and cure and will be materially modified, altered, and/or destroyed if he undergoes surgery before Magnolia Fleet is afforded an

---

[1] See generally, multiple correspondence from undersigned counsel to Grey's counsel requesting independent medical examinations, attached hereto as Exhibit "A."

4

independent medical examination. This spoliation of evidence will be prejudicial to Magnolia Fleet.

XVIII.

In an attempt to investigate Grey's claim, Magnolia Fleet scheduled an examination with neurosurgeon, Dr. Gabriel Tender, for September 5, 2018, and requested that Grey confirm his availability.[2]

XIX.

Despite diligent efforts to schedule an independent medical evaluation by Magnolia Fleet through undersigned counsel, Grey, through his attorney, has steadfastly refused to undergo an independent medical evaluation.

XX.

Over the course of two months, Grey failed to respond or otherwise advise to confirm he would attend the examination with Dr. Tender. Thus, Magnolia Fleet was forced to cancel the scheduled appointment and suffer significant delays in its maintenance and cure investigation. Dr. Tender's next available appointment is not until December 2018.

XXI.

After systematically ignoring Magnolia Fleet's repeated requests to confirm Grey's availability for the requested examinations with Dr. Tender and Dr. Melcher, Grey then sent correspondence requesting payment of testing recommended by Dr. Dietze.[3] Despite plaintiff's repeated failure to cooperate, Magnolia Fleet approved the requested testing under protest.[4]

---

[2] See Exhibit "A" (correspondence from undersigned counsel to Grey's counsel, dated July 16, 2018, and July 27, 2018, August 2, 2018, August 6, 2018, August 9, 2018, August 14, 2018, and August 21, 2018).
[3] See correspondence from Grey's counsel requesting approval of recommended testing, dated August 23, 2018, attached hereto as Exhibit "B."
[4] See Exhibit "A" (correspondence from undersigned counsel to Grey's counsel approving requested testing, dated August 27, 2018).

XXII.

Magnolia Fleet has also on multiple occasions requested that Grey execute blank medical and employment records authorizations so that it may conduct its maintenance and cure investigation.[5] The United States Court of Appeals for the Fifth Circuit has made clear that an employer is entitled to conduct a maintenance and cure investigation. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (en banc) (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987)).

XXIII.

Grey has repeatedly ignored Magnolia Fleet's requests. As recently as August 27, 2018, Grey attempted to unilaterally limit the scope of Magnolia Fleet's investigation, advising that he would not execute "blank authorizations of any kind" and demanded that Magnolia Fleet "fill in the employers as well as the medical providers."[6] Such is contrary to existing law because the inquiry into Grey's medical background is a necessary one given the allegations regarding the severity and extent of his injuries. Furthermore, Grey continues to demand the payment of maintenance and cure. *McKnight v. Blanchard*, 667 F.2d 477, 481-82 (5th Cir. 1982); *Lischka v. Tidewater Services, Inc.*, 1997 U.S. Dist. LEXIS 538, *5 (E.D. La. 1997); *Sinegal v. La. Workers Comp. Corp.*, 2008 U.S. Dist. LEXIS 93843 (W.D. La. Nov. 7, 2008); and *Thai v. Miller Truck Lines, Inc.*, 2006 U.S. Dist. LEXIS 56300, *1-2 (W.D. La. Aug. 11, 2006).

---

[5] See Exhibit "A" (correspondence from undersigned counsel to Grey's counsel, dated July 16, 2018, and July 27, 2018, August 1, 2018, August 2, 2018, August 6, 2018, August 9, 2018, August 14, 2018, August 21, 2018, and August 27, 2018).

[6] See correspondence from Grey's counsel to undersigned counsel objecting to Grey's execution of blank medical and employment authorizations, dated August 27, 2018, attached hereto as Exhibit "C."

XXIV.

Based on the foregoing, Magnolia Fleet asserts that Grey has purposefully hindered Magnolia Fleet's maintenance and cure investigation. Accordingly, Magnolia Fleet brings this action so that the necessary investigation/discovery can be conducted, and the rights, obligation and liabilities of Grey and Magnolia Fleet may be determined.

XXV.

Magnolia Fleet is therefore entitled to declaratory relief in order to resolve this actual controversy regarding Grey's right to maintenance and cure benefits and whether Magnolia Fleet is entitled to an independent medical examination in order to properly determine the nature and extent of cure required for the benefit of Grey.

XXVI.

Magnolia Fleet requests an immediate decision concerning this obligation in order to avoid potential liability. Magnolia Fleet has no adequate remedy at law whereby the relief sought can be obtained.

**WHEREFORE,** Magnolia Fleet prays that this Honorable Court enter Declaratory Judgment in favor of Magnolia Fleet, ordering that:

1. Grey submit to an independent medical evaluation by neurosurgeon, Dr. Gabriel Tender, on either December 12, 2018 at 11:00 a.m. or December 19, 2018 at 11:00 a.m.;

2. Grey submit to an independent medical evaluation by neurologist, Dr. Archie Melcher, on either October 12, 2018 at 1:00 p.m. or October 19, 2018 at 2:00 p.m.;

3. Grey execute and provide Magnolia Fleet with blank medical and employment authorizations to facilitate its maintenance and cure investigation;

4. Magnolia Fleet in no way caused or contributed to the alleged injuries suffered by Grey on or about April 3, 2018;

5. Magnolia Fleet owes no maintenance and cure obligation to Grey;

6. Magnolia Fleet has not acted in an arbitrary or capricious manner in administering maintenance and cure benefits to Grey;

7. All other equitable, legal and general relief to which Magnolia Fleet may be entitled.

        Respectfully submitted,

        */s/ Salvador J. Pusateri*
        Salvador J. Pusateri, T.A. (#21036)
        Aaron B. Greenbaum (#31752)
        Rowen A. Fricker (#33135)
        PUSATERI, JOHNSTON, GUILLOT & GREENBAUM
        1100 Poydras Street, Suite 2250
        New Orleans, LA 70163
        Telephone: 504-620-2500
        Facsimile: 504-620-2510
        Salvador.Pusateri@pjgglaw.com
        Aaron.Greenbaum@pjgglaw.com
        Rowen.Fricker@pjgglaw.com
        **ATTORNEYS FOR MAGNOLIA FLEET, LLC**