UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAGNOLIA FLEET, LLC       \*   CIVIL ACTION NO. 18-8363
         \*
         \*   SECTION: "B"(1)
VERSUS          \*
         \*   JUDGE IVAN L. R. LEMELLE
         \*
RICK GREY          \*   MAGISTRATE JUDGE
         \*   JANIS VAN MEERVELD
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*   \*

ORDER AND REASONS

Magnolia Fleet, LLC ("Magnolia Fleet"), the plaintiff in this declaratory action, has filed a Motion to Compel defendant Rick Grey to submit to independent medical examinations with neurologist Dr. Archie Melcher, and neurosurgeon Dr. Gabriel Tender, and to produce executed blank medical and employment record authorization forms. (Rec. Doc. 8). Because discovery has not yet started and Magnolia Fleet has not demonstrated sufficient urgency, the Motion is denied.

Background

Magnolia Fleet owns the M/V LYNN. Rick Grey, an employee of Magnolia Fleet, contends that on April 3, 2018, he slipped and fell in the shower stall of the M/V LYNN where he was working as a deckhand. He asserts that he sustained lower back injuries. Magnolia Fleet alleges that following Grey's report of injury, it immediately provided him with medical care from Dr. Michael Zeringue, at which time Grey was diagnosed with cervicalgia, pain in the thoracic spine, and given a "no work" status. Grey later began treating with Dr. James M. Dyess and continued to complain of neck pain radiating into his left arm, left elbow, and left hand into the left third and fourth fingers with pain, numbness, and weakness. Grey also complained of bowel incontinence, ringing in the ears, blurred vision, mild back pain, bilateral upper shoulder pain, chest pain, low

1

back pain radiating into the right lateral leg, right ankle pain with numbness and weakness, short-term memory loss, and headaches. Dr. Dyess recommended Grey continue physiotherapy and consult a neurosurgeon for his cervical and lumbar spine, an ENT for the ringing in his ears, and a neurologist for memory loss and blurred vision. An MRI with diagnostic imaging was performed, and Dr. Dyess opined that it revealed a positive L5-S1 disc herniation and a positive L4-5 disc bulge.

On June 6, 2018, Grey underwent a "surgical consult" with Dr. Donald Dietze in connection with neck and thoracic pain. Dr. Dietze assessed Grey as suffering clinically isolated syndrome of brainstem, post-concussion syndrome, concussion without loss of consciousness, meningismus, pain in the thoracic spine, acute bilateral low back pain with right-sided sciatica, and thyroid mass. Dr. Dietze reported that he was concerned Grey could have an intracranial vascular malformation causing the alleged high-pitched sound in his head with brainstem syndrome causing the alleged left arm weakness and right leg weakness associated with abnormal reflexes. Dr. Dietze recommended an MRI scan of the brain with MR angiography.

Magnolia Fleet asserts that it has acted reasonably and prudently in providing Grey with maintenance and cure benefits under protest. Following Dr. Dyess' recommendation that Grey consult a neurosurgeon, neurologist, and an ENT, and his opinion regarding the MRI, Magnolia Fleet requested that Grey submit to an independent medical examination ("IME") with each neurologist Dr. Archie Melcher and neurosurgeon Dr. Gabriel Tender. However, Grey refused to undergo an IME. Grey has also refused to execute blank medical and employment records authorizations. Thus, on September 4, 2018, Magnolia Fleet filed the present lawsuit "so that the necessary investigation/discovery can be conducted, and the rights, obligations and liabilities of Grey and Magnolia Fleet may be determined." Magnolia Fleet asserts it is entitled to declaratory

relief to resolve the controversy regarding Grey's right to maintenance and cure benefits and whether it is entitled to an IME.

Grey has not filed an answer to the complaint, but instead filed a motion to dismiss on October 8, 2018. No scheduling conference has been set, nor has a trial date been selected.

On October 9, 2018, Magnolia Fleet filed the present motion to compel Grey to submit to the IMEs with Dr. Melcher and Dr. Tender and to produce executed, blank medical and employment authorization forms. It insists that an IME must occur prior to any surgery to avoid the spoliation of evidence.

Grey opposes. He insists that the motion is premature because no scheduling conference has been set and no conference under Federal Rule of Civil Procedure 26(f) has been held. Grey has filed a motion to dismiss Magnolia Fleet's lawsuit as a preemptive declaratory judgment action in this maritime personal injury case. He points out that he has now filed suit in Louisiana state court and notes that Magnolia Fleet can raise the present issues there. He argues that the motion to compel should not be decided until the motion to dismiss is resolved to avoid having the same issues pending in different courts with the associated risk of inconsistent and conflicting rulings. At oral argument, counsel for Grey represented that to his knowledge, no recommendation of surgery has been made and Grey has not treated with a neurologist or an ENT.

Law and Analysis

1. *Timing of Discovery*

The Federal Rules of Civil Procedure contemplate that discovery begin once the conference mandated by Rule 26(f) has been conducted and that discovery proceed in any sequence. Fed. R. Civ. Proc. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under

Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."). Courts in this circuit typically use a "good cause" standard when addressing the question of whether to expedite discovery. See BKGTH Prods., LLC v. Does 1-20, No. CIV.A. 13-5310, 2013 WL 5507297, at *4 (E.D. La. Sept. 30, 2013); St. Louis Grp., Inc. v. Metals & Additives Corp., 275 F.R.D. 236, 240 (S.D. Tex. 2011). "The good cause analysis takes into consideration such factors as the breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made." ELargo Holdings, LLC v. Doe-68.105.146.38, 318 F.R.D. 58, 61 (M.D. La. 2016).

Here, Magnolia Fleet seeks to obtain discovery from Grey although no scheduling conference has been set by the Court and the Rule 26(f) discovery conference has not yet been held. Magnolia Fleet has tried to characterize its conferences with counsel regarding these particular discovery requests as the Rule 26(f) conference, however, the Rule 26(f) conference should include discussion of more than a specific request for discovery. Nonetheless, the discovery requested by Magnolia Fleet at this time may be appropriate. The court considers whether Magnolia Fleet has established good cause for expedited discovery as to each request.

*2. Independent Medical Examinations*

Upon good cause shown by the moving party, the court may order a physical or mental examination of a party by a suitably licensed or certified examiner when the party's physical or mental condition is in controversy. Fed. R. Civ. Proc. 35(a)(1). While conclusory allegations in the pleadings are not sufficient to meet the "good cause" and "in controversy" requirements of Rule 35, the Supreme Court has recognized that in some cases, the pleadings alone will satisfy the Rule's requirements. Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964). Thus, "[a] plaintiff in a

negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Id.  (citation omitted). In determining whether good cause exists, courts also frequently look "to whether the plaintiff has retained his own experts, and whether he intends to prove his claims through their testimony at trial." Ornelas v. S. Tire Mart, LLC, 292 F.R.D. 388, 392 (S.D. Tex. 2013). Clearly, one or more IMEs will be appropriate in this case.

As to the timing of an IME however, courts have required that an IME must occur prior to surgery to avoid spoliation of evidence. Julien v. EPL Oil & Gas, Inc., No. CIV.A. 15-557, 2015 WL 4937900, at *3 (E.D. La. Aug. 17, 2015) ("To avoid the spoliation of evidence, the IME must occur before Plaintiff's shoulder surgery."); Gant v. Helix Energy Sols. Grp., No. CIV.A. 07-0618, 2007 WL 2316526, at *1 (W.D. La. Aug. 9, 2007) (holding that where plaintiff had filed a claim for damages and had sought treatment from an orthpaedist who had recommended surgical intervention, the defendants were "entitled to an IME and said IME should be conducted prior to plaintiff's surgery").

Here, Magnolia Fleet demands that Grey submit to an IME immediately. There is no dispute that Grey's physical condition is at issue in this lawsuit or that Grey is treating with a neurosurgeon. Grey does not challenge the qualifications of neurosurgeon Dr. Tender. Grey primarily opposes the timing of the IME, and at oral argument, counsel for Grey also insisted that an IME with a neurologist would not be appropriate because Grey is not treating with one. Magnolia Fleet responded that Dr. Dyess had referred to Grey to a neurologist, although Magnolia Fleet had no reason to believe Grey is actually treating with a neurologist at this time.

The court is sympathetic to Magnolia Fleet's concern that it be permitted to promptly investigate Grey's alleged injuries in light of the extent of the injuries complained of following this unwitnessed incident (including brainstem syndrome, memory loss, and pain and numbness radiating in the left fingers and right ankle) and in light of the fact that it is paying maintenance and cure (although who has paid for Grey's medical care thus far was contested at oral argument). However, in considering whether Magnolia Fleet has established good cause for an IME where discovery has not yet begun, the court is swayed by counsel's representation that Grey has not been recommended or scheduled for surgery. Grey's counsel also certified on the record that if surgery is recommended, he will provide notice to Magnolia Fleet's counsel at least six weeks in advance, barring an emergency. Under these circumstances, the court finds there is no urgency requiring an IME at this time. Further, the court is also cognizant of the possibility that this lawsuit will proceed in state court rather than before this court. Accordingly, the court will not compel Grey to submit to an IME with Dr. Tender or Dr. Melcher now.

3. *Signed Medical and Employment Authorizations*

Although Grey opposes executing the medical and employment authorization forms because they are blank, Grey's primary objection to producing them is that discovery is premature. Grey insists that there was no urgency requiring the execution of authorizations at this time. The court agrees. Magnolia Fleet has not sufficiently demonstrated a need to deviate from the normal flow of discovery. Accordingly, the court will not compel Grey to sign the authorizations at this time. In light of this decision, the Court declines to address the issue of whether blank authorizations are appropriate or whether Magnolia Fleet will have to submit authorizations containing the identity of the health care provider, employer, or other recipients.

<u>Conclusion</u>

Because Magnolia Fleet has not established good cause to expedite its discovery requests for IMEs and for Grey to sign medical and employment authorizations, the Motion to Compel (Rec. Doc. 8) is DENIED.

New Orleans, Louisiana, this 30th day of October, 2018.

Janis van Meerveld
United States Magistrate Judge